**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION**

| | | |
|---|---|---|
| **SIMS AGENCY LLC** | § | **PLAINTIFF** |
| | § | |
| | § | **Case No. 3:22cv002-THW-LGI** |
| **v.** | § | |
| | § | |
| **GOVERNMENT EMPLOYEES** | § | |
| **INSURANCE COMPANY AND** | § | |
| **GEICO INSURANCE AGENCY, INC.,** | § | |
| **AND JOHN DOES 1-5** | § | **DEFENDANTS** |

## SIMS AGENCY LLC'S MEMORANDUM OF AUTHORITIES IN SUPPORT OF ITS RESPONSE TO MOTION FOR PROTECTIVE ORDER

The facts leading to Sims Agency LLC's ("Sims") wrongful termination claim began when Todd Combs, the CEO of GEICO, became extremely angry about a leak of company information and in response directed his subordinates to investigate the leak. The investigators, motivated by Mr. Combs' vehement desire to find someone to blame, conducted the investigation with an eye toward terminating as many people as possible. Attempting to satisfy Mr. Combs, who was ultimately overseeing the investigation, the investigators recommended terminating Sims even though they could not prove Sims was involved with the leak. The investigators used vague questions during Sims' interview and when the desired responses were not given, they concluded Sims was being dishonest and terminated his contract. Mr. Combs wrote several emails generally criticizing the investigation and at one point stated that he was planning to "wring someone's neck." Mr. Combs also wrote an email specifically about Sims that contained typos and is subject to multiple interpretations. Sims should be allowed to depose Mr. Combs to address the emails and develop this key theme of its case.

GEICO attempts to stonewall Mr. Combs deposition by offering a Fed. R. Civ. P. 30(b)(6) deposition of GEICO and producing a sworn declaration from Mr. Combs. GEICO cannot dictate the means of discovery by offering a corporate deposition in lieu of the deposition of a fact witness who has specific knowledge relevant to Sims' claims. Additionally, the conclusions within Mr. Combs' sworn declaration do not constitute "good cause" to permit a protective order. If a deposition can be quashed simply by a deponent submitting a "know nothing" declaration and swearing that they are busy and important, then any deposition could be avoided.

Simply put, Mr. Combs is a critical witness to Sims' case, and out of 40,000 employees, **GEICO decided** to identify Mr. Combs in their discovery as a witness with knowledge of Sims' termination. When an apex employee is a key witness, he cannot shield himself from a deposition by swearing he knows nothing and is too busy.

## ARGUMENTS & AUTHORITIES

The scope of discovery is set forth in Rule 26(b)(1) as follows:

> Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1). A protective order is appropriate only upon a showing of good cause. Federal Rule of Civil Procedure 26(c)(1) states that: "[t]he court may, for **good cause**, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following . . ." (emphasis added).

A party refusing to produce a company witness for a deposition bears a heavy burden. "It is very unusual for a court to prohibit the taking of a deposition altogether and absent ***extraordinary circumstances***, such an order would likely be in error." *Salter v. Upjohn Co.*, 593 F.2d 649, 651 (5th Cir. 1979)(emphasis added); see also CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2037 (3d ed. 1998) ("It is even more difficult to show grounds for ordering discovery not to be had when it is a deposition that is sought, and most requests of this kind are denied."). "An order prohibiting the taking of a deposition is both 'unusual and unfavorable.'" *Bedford v. American Honda Motor Co., Inc.*, No. 1:18-CV-175, 2019 WL 7040620, at *2 (N.D. Miss. Dec. 20, 2019) (quoting *Investment Properties, International, Ltd. v. IOS, Ltd.*, 459 F.2d 705, 708 (2nd Cir. 1972)).

**A. Extraordinary circumstances do not exist here.**

Good cause, "contemplates a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements." *In re Terra Int'l, Inc.*, 134 F.3d 302, 306 (5th Cir. 1998) (citations and quotations omitted). Conclusory assertions are insufficient to establish good cause to prevent a deposition. *Hostetler v. Dillard*, No. 313CV351DCBMTP, 2015 WL 11117928, at *2 (S.D. Miss. Feb. 4, 2015) (citing *Medlin v. Andrew*, 113 F.R.D. 650, 653 (M.D.N.C. 1987) and *CBS, Inc. v. Ahern*, 102 F.R.D. 820 (S.D.N.Y.1984) (busy schedule not good cause to quash deposition)).

1. *GEICO's conclusory statements do not establish good cause.*

In moving for a protective order, GEICO submitted a self-serving declaration sworn by Mr. Combs that stated it would be "extremely burdensome" for Mr. Combs to sit for a deposition and that Mr. Combs has "no unique personal knowledge related to [the] claims against GEICO." *See* T. Combs Declaration (Doc. #39-3). These conclusions do not establish extraordinary

3

circumstances or a "particular and specific demonstration of fact" required to prevent the deposition. A party opposing the deposition of a corporate officer, "must show more than these blanket statements to satisfy their burden for a protective order" and they must "explain why the particular information sought by plaintiffs would inflict annoyance, harassment, embarrassment, oppression or undue delay, burden or expense sufficient for issuance of a protective order when that information was sought from this particular individual." *Crest Infiniti, II, LP v. Swinton*, 174 P.3d 996, 1004 (Okla. 2007).

Further, Plaintiff is entitled to test self-serving averments of lack of knowledge of Mr. Combs – particularly when Mr. Combs' individual emails were produced by GEICO as relevant to discovery and when GEICO identified Mr. Combs as one of a few people with relevant knowledge. *Travelers Rental Co., Inc. v. Ford Motor Co.*, 116 F.R.D. 140, 143 (D. Mass. 1987) (plaintiff is entitled to test "know nothing" affidavit, which was plainly insufficient to support a motion to quash, by deposing the witness).

GEICO seeks to prevent Mr. Combs deposition and assures Sims that it can take a 30(b)(6) of GEICO. But GEICO should not be allowed to force Sims to take a Rule 30(b)(6) deposition in lieu of taking Mr. Combs' deposition. Rule 30(b)(6) contains no provision precluding depositions of specific, named, corporate witnesses. *Hosp. Corp. of Am. v. Farrar*, 733 S.W.2d 393, 395 (Tex. App. 1987) (Rule 30b6 never intended to limit a deposing party's ability to take the deposition of a corporate officer, nor was it intended to allow a corporation to play the corporate information shell game).

2. *Conclusions within a "know nothing" affidavit are suspicious.*

The reason why alleged lack of knowledge is not a sufficient ground to prevent a deposition is obvious. The very purpose of deposition discovery is to test the extent of the

4

deponent's knowledge and claims of ignorance. *Kuwait Airways Corp. v. American Security Bank, N.A.*, 1987 VVL 11994, *2 (D.D.C.1987) (citing *Amherst Leasing Corp. v. Emhart Corp.*, 65 F.R.D. 121, 122 (D. Conn.1974)); *see also Six West Retail Acquisition, Inc. v. Sony Theatre Management Corp.*, 203 F.R.D. 98, 102 (S.D.N.Y. 2001)("[e]ven where, as in this case, a high-ranking corporate officer denies personal knowledge of the issues at hand, this 'claim . . is subject to testing by the examining party")(quoting *Consolidated Rail Corp. v. Primary Industries Corp.*, 1993 WL 364471 at *1 (S.D.N.Y.1993)).

In *Naftchi v. New York University Medical Center*, 172 F.R.D. 130, 133 (S.D.N.Y. 1997) the court rejected a deponent's "know nothing" affidavit and held that the apex official did not assert that he lacked familiarity with any of the matters at issue, but simply attested that he did not have personal knowledge of the plaintiff. These assertions did not equate with attesting that the apex official lacked information pertinent to the lawsuit or even information that could lead to relevant evidence and thus the assertions were insufficient to prevent the deposition. *Id.*

In *Hostetler*, the Court denied a request to prevent a deposition because the witness had memory loss and found that the "plaintiffs should be given an opportunity to test [the] asserted lack of memory and to develop, if possible, the facts and circumstances surrounding the parties' contract." *Hostetler v. Dillard*, No. 313CV351DCBMTP, 2015 WL 11117928, at *2 (S.D. Miss. Feb. 4, 2015). Sims should be given the opportunity to test Mr. Combs' alleged lack of knowledge and develop its case. *See Mills v. WalMart Stores, Inc.*, 2007 WL 2298249 (W.D. Ark. Aug. 7, 2007) (CEO of Wal Mart not protected by apex doctrine even though no direct knowledge was shown because record suggested he "may have relevant information" to the claims).

3. *Todd Combs' has unique personal knowledge.*

Todd Combs cannot claim he lacks familiarity with any of the matters at issue. After being briefed on Sims' first interview, Mr. Combs provided the following comments and instruction for the investigators: "[i]f he's not a gfr and his performance is poor I would go so far as to threaten his status if he doesn't tell. This investigation could not have been run any worse if we tried. It's no wonder we still don't know who leaked it." *See* T. Combs Email [Exh. A]. The investigators, who reported to Mr. Combs, did not take the advice to only "threaten" Sims but decided to terminate Sims without warning. This may explain why Mr. Combs ultimately fired Kirk La, one of the lead investigators.

Mr. Combs' statement that Sims was ***not*** a GFR was addressed by Combs saying, "Sorry I meant to type a well performing gfr", but that does not exactly clarify the statements within the email. *Id.* This email shows Mr. Combs has unique knowledge of the very investigation that led to Mr. Sims being terminated. It seems to show that Mr. Combs was attempting to give the investigators instructions on what to say to Sims. It shows that Mr. Combs was working with bad information if he meant that Sims was a "poor performer," but in this litigation GEICO has repeatedly stated that performance was not a reason for terminating Sims. These issues raise serious questions about the veracity of the "know nothing" declaration.

Ultimately, Sims was terminated based on an investigation that Mr. Combs criticized by concluding "it could not have been run any worse if we tried." *Id.* Mr. Combs also wrote, "Who is in charge of this investigation so I can call them Monday and wring their neck?" Sims should be allowed to develop testimony from Mr. Combs as to this overall criticism of the investigation. If Sims was terminated based on a botched investigation that would support Sims' claim that his contract was wrongfully terminated. Clearly, Mr. Combs has unique knowledge and a strong

opinion about whether the investigation was botched and Sims is entitled to depose him on this. *See In re Chase Bank USA, N.A. "Check Loan" Contract Litigation*, 2011 WL 5248158, *1 (N.D. Cal. Nov. 3, 2011)(apex protection not allowed on argument that relevant decision was made by lower level executive that had already been deposed finding CEO was involved with decision and CEO may have recollection different than other deponents).

4. *GEICO identified Mr. Combs as someone with knowledge of Sims' termination.*

With Interrogatory No. 4, Sims asked GECIO to "state in detail and with specificity all reasons for Defendants' termination . . . including in your answer all ***witnesses*** . . ." and GEICO responded in part:

> **FIRST SUPPLEMENTAL RESPONSE:**
>
> "… GEICO further objects to this interrogatory as overly broad because it essentially requests, in a single interrogatory, GEICO narrate all facts that could possibly support any or all of its defense to Sims' claims …
>
> Without waiving this objection, GEICO interprets this interrogatory as requesting the reasons Sims was terminated, and ***the witnesses*** and documents evidencing those reasons. Although no reason was required to terminate, grounds for termination are stated in GEICO's responses to Interrogatories Nos. 1-4. Pursuant to Fed. R. Civ. P. 33(d), please see the documents identified by bates Number in GEICO's First Supplemental Response to Interrogatory No. 1. Shawn Burklin, Kirk La, Derek Bottcher, Seth Ingall, and ***Todd Combs*** had varying levels of involvement in the decision to terminate the GFR Agreement with Sims.

See GEICO's Responses to First Set of Interrogatories [Exh. B] (emphasis added). GEICO cannot be allowed to expressly state that its response does not "narrate all facts that could possibly support any or all of its defenses" and then identify Mr. Combs as a witness with knowledge but then not offer him up for a deposition. Given that Mr. Combs was directly involved in the decision to terminate Sims, then he has unique personal knowledge and Sims should be given the opportunity to depose him.

7

GEICO has 40,000 employees, yet it chose to identify five (5) as potential witnesses with "varying degrees" of knowledge on the issue of Sims' termination. Since Mr. Combs is one of the five (5) GEICO chose, he should be required to sit for a deposition. There were many others who were on emails discussing the decision to terminate Sims, but GEICO did not include every single person on emails discussing the issues, which suggests these five (5) have unique knowledge. GEICO should not be allowed to backtrack from its own documents and sworn Interrogatory Answers that demonstrate Mr. Combs' involvement and knowledge of relevant matters and make the claim that Mr. Combs does not have any unique knowledge just because Mr. Combs is busy and important. *See Weber v. Fujifilm Medical Systems U.S.A., Inc.*, 2011 WL 677278 (D. Conn. 2011) (CEO involved in termination of employee was subject to deposition despite his claim of tremendous burden and lack of knowledge.).

Mr. Combs made time to be personally involved in the investigation that led to GEICO's wrongful termination of Sims' contract and so Mr. Combs should be make time to be deposed on the important matter. *Nolte v. Cigna Corp.*, No. 07-2046 2010 WL 3199740 *3 (C.D. Ill 2010) (CEO required to sit for deposition because court found that members of a committee that CEO had authority to appoint would act at CEO's direction and according to CEO's wishes); *Luangisa v. Interface Operations*, No. 2:11-cv-00951 2011 WL 6029880 *13-14 (D. Nev. 2011)(high ranking executive not protected by apex doctrine because of personal knowledge of facts relevant to case); *First Nat'l Mortg. Co. v. Fed. Realty Inv. Trust*, 2007 WL 4170548 (N.D.Cal.2007)("[t]he mere fact ... that other witnesses may be able to testify as to what occurred at a particular time or place does not mean that a high-level corporate officer's testimony would be repetitive. Indeed, it is not uncommon for different witnesses to an event to have differing recollections of what occurred.")

### B. *No specific need for protection offered.*

This Court has held that, "[a] party seeking a protective order must show **both** 'good cause' and a specific need for protection." *Hostetler v. Dillard*, No. 313CV351DCBMTP, 2015 WL 11117928, at *2 (S.D. Miss. Feb. 4, 2015)(citing *Landry v. Air Line Pilots Association*, 901 F.2d 404, 435 (5th Cir. 1990)); *Harris v. Clay Cnty., Mississippi*, 514 F. Supp. 3d 880, 881 (N.D. Miss. 2021). If every CEO could avoid a deposition because they are busy and important even though he/she was directly involved in events leading to a cause of action, then CEO's would be able to act freely without ever having to be subject to a deposition. Here, GEICO has completely failed to show a specific need for protection.

### C. *GEICO cites no apex doctrine authority on point.*

All of the apex doctrine cases GEICO cites are distinguishable. GEICO relies heavily on *Salter v. Upjohn Co.,* 593 F.2d 649 (5th Cir. 1979). In *Salter* the court affirmed a lower court ruling that held a lower-level employee should be deposed before the president, but that court goes on to note that "if after taking the other depositions, plaintiff was not satisfied and again properly gave notice of or requested taking [the disputed] deposition, the judge probably should have allowed the deposition" *Id.* at 651. The court in *Salter* specifically held that, "[b]ecause the judge was justified in postponing Dr. Hubbard's deposition the first-time plaintiff requested it, and because plaintiff did not properly reassert the request, the district judge did not abuse his discretion by preventing the deposition any of the three times the plaintiff sought to take it." *Id.* at 652.

Similarly, in *Pan Am. Life Ins. Co. v. Louisiana Acquisitions Corp.*, 2015 WL 4168435 (E.D. La. July 9, 2015) the court ordered the taking of lower level employees before the CEO and the plaintiff failed to explain why it could not wait until after the six depositions scheduled

to determine if the CEO's deposition was necessary. Here Sims has already taken the lower level depositions and is not satisfied. Therefore, the holdings in *Salter* and *Pan American* would support, if not require, that Sims be allowed to take the deposition of Mr. Combs.

GEICO also relies on the ruling in *Buchholz v. Crestbrook Ins. Co.*, 2021 WL 3571277 (W.D. Tex. Aug. 11, 2021), but in *Buchholz* the apex witness was granted a protective order because the witness was not personally involved in the decisions that formed the basis of plaintiff's claims and because the subsequent communications he was involved with occurred "well after the decisions were made." *Id.* at *3. Here Todd Combs was obviously directly involved prior to the decision being made to terminate Sims and prior to Sims' second interview.

GEICO cites *Robinson v. Nexion Health at Terrell, Inc.*, 2014 WL 12915533 (N.D. Tex. Apr. 16, 2014) and argues that "unique personal knowledge" is always required to proceed with an apex deposition. As set forth above Mr. Combs has unique personal knowledge. The Robinson court held that when an apex deponent, has "unique personal knowledge" about the subject matter at issue, then an apex deposition may go forward without first "utilizing less intrusive means."

GEICO cites a number of cases purportedly holding that no "single email" should compel a CEO to sit for a deposition. [Doc. 40 at 12-13]. Surely GEICO is not suggesting the Court should reduce the legal standard applied when a party attempts to prevent a deposition to an overall count of emails. Regardless, the "single email" standard proposed by GEICO is not convincing because Todd Combs authored at least five (5) emails in a single email thread. According to GEICO's privilege log Mr. Combs authored three (3) other emails that have been redacted. Furthermore, Mr. Combs was copied on a number of emails sent by others regarding the issues in this case. Therefore, the "single email" argument can be easily rejected.

**D.** *Need for Todd Combs deposition is proportional to needs of case.*

Fed. R. Civ. P. 26(b)(1) provides that a party may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the following six factors: (i) importance of the issues at stake; (ii) amount in controversy; (iii) the parties' relative access to relevant information; (iv) the parties' resources; (v) the importance of the discovery in resolving the issues; and (vi) whether the burden or expense of the proposed discovery outweighs its likely benefit.

Here, consideration of these factors demonstrates that the need for Mr. Combs' deposition is proportional to the needs of this case.

1. *Importance of issues.*

The issues at stake in this litigation are important. Sims moved his family from Georgia to Mississippi to work for GEICO as a field representative. Sims worked hard to build up his book of business and he was a successful agent for GEICO. Then, by no fault of Sims, confidential information was leaked to various GEICO employees and an investigation was conducted at the direction of Mr. Combs that led to GEICO abruptly ending Sims' contract. Sims lost years of work to build up the business and clientele and he lost his livelihood to support his family.

2. *Amount in controversy.*

Having Todd Combs sit for a Zoom deposition in this matter is in proportion to the needs of the case. From an amount in controversy standpoint Sim's economist calculates damages to be $3,001,198 *See* Chris Earle's Report [Exh. C] and GEICO's economist calculates damages to be $ 1,536,467 *See* Stephanie Smith Report [Exh. D].

3. *Access to relevant information.*

Only Mr. Combs can provide insight into what his words and intent were in the emails produced by GEICO. Sims has no other access to this information, which is important to developing his claims.

4. *Parties' resources.*

GEICO – "the second-largest private passenger auto insurer in the United States, with more than $32 billion in assets and over 40,000 employees" [Doc. 40 at 2] – certainly has the resources to setup a Zoom Meeting for Sims to conduct Mr. Combs' deposition.

5. *Importance of the discovery in resolving the issues.*

It appears that Mr. Combs' anger was what motivated the investigators to be so anxious to terminate Sims' contract. The jury should hear Mr. Combs' explanation of all <u>his</u> comments, criticisms, and instructions provided regarding the investigation that ultimately led to the termination of Sims. If Mr. Combs' anger was the driving force behind the investigation, then Mr. Combs' testimony a very important issue in this case.

6. *Whether the burden or expense of the proposed discovery outweighs its likely benefit.*

Mr. Combs was not too busy or important to weigh in on the investigation that led to GEICO's wrongful termination of Sims contract so it should not be a burden for him to sit for a Zoom deposition in this matter.

**E. Dispositive arguments are misplaced and unpersuasive.**

GEICO's dispositive arguments should not decide the discovery issue before the Court. For a full discussion on the dispositive issues Sims refers the Court to Sims' Response to GEICO's Motion to Dismiss [Doc. 10]. In sum, GEICO's 2020 Agreement with Sims is ambiguous as to whether GEICO can terminate the contract "without cause." GEICO's prior

contract with Sims was not ambiguous but the relevant language that made this issue clear was removed from the 2020 agreement. Because the contract is ambiguous the term is to be construed against GEICO.

THIS the 7th day of October, 2022.

>*/s/ Margaret Z. Smith*
>William P. Thomas (MS Bar # 102209)
>Margaret Z. Smith (MS Bar #104178)
>BUTLER SNOW LLP
>1020 Highland Colony Parkway
>Post Office Box 6010
>Ridgeland, MS 39158-6010
>Phone: (601) 948-5711
>Fax: (601) 985-4500
>Email: will.thomas@butlersnow.com
>Email: margaret.smith@butlersnow.com
>
>*Counsel for Plaintiff Sims Agency LLC*

## CERTIFICATE OF SERVICE

I hereby certify that I have this the 7th day of October 2022, electronically filed a true and correct copy of the foregoing document with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

Adam Stone
Kaytie M. Pickett
Amber L. Kipfmiller
JONES WALKER LLP
190 E. Capitol Street, Ste. 800
Jackson, Mississippi 39201
Telephone: (601) 709-3344
Fax: (601) 949-4804
ASTONE@JONESWALKER.COM
KPICKETT@JONESWALKER.COM
AKIPFMILLER@JONESWALKER.COM

                                          */s/ Margaret Z. Smith*
                                          *Counsel for Sims Agency LLC*