IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

**SIMS AGENCY LLC**                                                                  **PLAINTIFF**

vs.                                                          **CIVIL ACTION No.: 3:22-CV-00002-HTW-LGI**

**GOVERNMENT EMPLOYEES**
**INSURANCE COMPANY AND**
**GEICO INSURANCE AGENCY, INC. AND**
**JOHN DOES 1-5**                                                                **DEFENDANTS**

**ORDER**

BEFORE THIS COURT is a *Motion to Dismiss* **[Docket no. 4]**, filed by the Defendants, Government Employees Insurance Company, and GEICO Insurance Agency, Inc. (hereinafter collectively referred to as "GEICO"). GEICO filed its Motion under the auspices of Federal Rule of Civil Procedure 12(b)(6)[1], arguing that Plaintiff Sims Agency, LLC ("Plaintiff") has failed to state any viable claims against GEICO upon which relief can be granted.

Plaintiff, in its Response to GEICO's Motion to Dismiss, contends otherwise, and denies that its pleadings are inadequate. Plaintiff, argues instead that its Complaint features viable claims against GEICO for: breach of contract; right to "renewal commissions"; and unjust enrichment.

This court has reviewed the submissions of the parties and the relevant jurisprudence governing this lawsuit. For the reasons set forth below, this court GRANTS IN PART and DENIES IN PART GEICO's Motion to Dismiss [Docket no. 4].

---

[1] b) How to Present Defenses. Every defense to a claim for relief in any pleading must be asserted in the responsive pleading if one is required. But a party may assert the following defenses by motion: … 6) failure to state a claim upon which relief can be granted…
Fed. R. Civ. P. 12

## I.  BACKGROUND

GEICO, a Maryland corporation, and Plaintiff, a Mississippi limited liability company[2], entered into a contractual relationship, whereby GEICO authorized Plaintiff to act as an "independent contractor captive agent[3]" of GEICO's. This contractual relationship forms the basis of Plaintiff's Complaint.

### A. *The Agreements*

Plaintiff and GEICO first entered into an Agreement on September 27, 2016, pursuant to which Plaintiff became a GEICO Field Representative ("GFR") ["2016 GFR Agreement," Docket no. 1-1, pp. 10-28]. The 2016 GFR Agreement authorized Plaintiff to act as GEICO's representative "for the limited purpose of personally soliciting and procuring applications for all of the lines of insurance as set forth in underwriting guides issues from time to time and offered by [GEICO], and to provide services to [GEICO] policyholders where [Plaintiff] and [GEICO] are both licensed...." [Docket no. 1-1, p. 10]. The 2016 GFR Agreement stipulated that the Agreement "may be terminated without cause by either [GEICO] or GFR upon sixty (60) days written notice (or upon such longer notice required by law) to the other." [Docket no. 1-1, p. 21].

On December 29, 2020, Plaintiff and GEICO entered into a subsequent superseding Agreement ["2020 GFR Agreement", Docket no. 1-1, pp. 29-37]. The 2020 GFR Agreement appointed Plaintiff as an "independent contractor captive agent" of GEICO's "for the limited purpose of soliciting and procuring applications for insurance for those companies and lines of insurance authorized by GEICO from time to time and to provide various services to GEICO's

---

[2] Plaintiff's Complaint alleges that the Sims Agency, LLC was formed by Mr. William H. Sims, III ("Mr. Sims"). This court has before it no evidence showing that Plaintiff had members or employees other than Mr. Sims.

[3] Black's Law Dictionary defines a captive agent as "an agent who only represents one company exclusively and no one else".

2

policyholders". [Docket no. 1-1, p. 29]. The 2020 GFR Agreement provided that no employer-employee relationship existed between Plaintiff and GEICO, emphasizing that the "success or failure of [Plaintiff's] business will be dependent upon [Plaintiff's ability] as an independent businessperson".

Two provisions of the 2020 GFR Agreement are of particular importance to this suit: the Compensation Clause and the Termination Clause.

The Compensation Clause of the 2020 GFR Agreement states, in pertinent part:

(B) As sole and complete compensation for its services hereunder as respects GEICO policies, GEICO will pay to GFR commissions on business produced by GFR as set forth in the applicable schedule of commissions…

[Docket no. 1-1, p. 34].

The Termination Clause of the 2020 GFR Agreement provides, in pertinent part that:

(A) This Agreement may be terminated by GEICO or GFR on 30 days prior written notice. GEICO may terminate this Agreement with immediate effect in the event of any breach of this Agreement by GFR, any change in control of GFR, in the event that GFR or any of its principals becomes unlicensed or unable to continue for any reason, or the event that GEICO determines that it is in the best interests of GEICO or its policyholders to terminate…

(C) Upon termination of this Agreement, GEICO shall withhold GFR's final commission check for a period of six (6) months following the termination effective date. The amount of the final commission check is subject to [adjustments and offsets]…

[Docket no. 1-1, p.34]. This court notes that the 2020 GFR Agreement contains a preamble before it lists the conditions and terms of the contract. This preamble contains, *inter alia*, the following language: "…(iii) GEICO retains the right to terminate this Agreement in its sole discretion should it determine for any reason that the interests of GEICO, its business plans, or its policyholders are furthered thereby[.]" [Docket no. 1-1, p. 29].

The 2020 GFR Agreement finally establishes that "[the] Agreement shall be governed by the substantive laws of the State of Maryland without regard to its conflict of laws principles. [Docket no. 1-1, p. 35]."

## B. The Lawsuit

Plaintiff alleges that in May 2021, GEICO interviewed Mr. Sims, Plaintiff's representative, "to investigate a leak of confidential and proprietary company information" [Docket no. 1-1, ¶ 13]. Plaintiff states that, on June 14, 2021, three weeks after the interview, GEICO sent Plaintiff a letter "giving notice of [its] election to terminate the 2020 GFR Agreement with [Plaintiff], effective August 13, 2021". Plaintiff contends that GEICO's letter did not provide any grounds for the termination[4]." [Docket no. 1-1, ¶ 14].

Plaintiff claims that GEICO terminated the 2020 GFR Agreement "in retaliation for Plaintiff's conduct during the investigation". GEICO's termination, says Plaintiff, was "arbitrary, retaliatory, and a breach of the covenant of good faith and fair dealing". [Docket no. 1-1, ¶¶ 16-17, 20-22]. Plaintiff further alleges that, pursuant to the 2020 GFR Agreement, Plaintiff is entitled to an undefined period of renewal commissions. [Docket no. 1-1, ¶¶ 28-30]. Finally, says Plaintiff, GEICO's collection of renewal commissions on policies Plaintiff sold amounts to unjust enrichment. [Docket no. 1-1, ¶¶ 31-35].

Plaintiff filed its Complaint against GEICO and John Does 1-5[5] in the Circuit Court of Madison County, Mississippi ("state court"). After said filing, GEICO removed this lawsuit from

---

[4] Plaintiff alleges, however, that he learned in a telephone call with GEICO employee and GFR Director Jordan Cober, that "the decision to terminate the GFR Agreement was based on how [Plaintiff] handled the investigation.

[5] John Does 1-5 are fictitious defendants, whose identities are currently unknown to this court; as such, their presence may be ignored. *Chapman v. Kroger Ltd. Partn.*, 3:11-CV-688 HTW-LRA, 2012 WL 775812, at *2 (S.D. Miss. Mar. 7, 2012).

state court to this federal forum on the basis of diversity jurisdiction under the authority of Title 28 U.S.C. §§ 1332[6], 1441[7], and 1446[8]. [Docket no. 1].

Plaintiff, in support of its claims against GEICO, directs this court to two key components of the 2016 GFR Agreement and the 2020 GFR Agreement. First, says Plaintiff, under the 2020 GFR Agreement, GEICO could no longer terminate Plaintiff "without cause" because this specific language had been omitted from the contract. Rather, says Plaintiff, GEICO could only terminate the 2020 GFR Agreement "should it determine for any reason that the interest of GEICO, its business plans, or policyholders are furthered thereby." [Docket no. 1-1, p. 3].

Secondly, Plaintiff asserts that while the 2016 GFR Agreement included that "[Plaintiff] shall not be entitled to any payments, or renewal, or service commissions based on renewals occurring subsequent to the termination date" [Docket no. 1-1, p 22], the 2020 GFR Agreement omits such language. Plaintiff contends that the deletion of this language from the subsequent 2020 GFR Agreement indicates that after the Agreement between GEICO and Plaintiff had been

---

[6] Title 28 U.S.C. § 1332 states:
    (a) The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interests and costs, and is between—
        (1) Citizens of different States; …

[7] Title 28 U.S.C. § 1441 states:
    a) Generally.--Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending.
    (b) Removal based on diversity of citizenship.--(1) In determining whether a civil action is removable on the basis of the jurisdiction under section 1332(a) of this title, the citizenship of defendants sued under fictitious names shall be disregarded.

[8] Title 28 U.S.C. § 1446(b)(1) states:
    The notice of removal of a civil action or proceeding shall be filed within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based, or within 30 days after the service of summons upon the defendant if such initial pleading has then been filed in court and is not required to be served on the defendant, whichever period is shorter.

terminated, GEICO was bound to continue paying "renewal commissions" to Plaintiff "according to the applicable schedules". [Docket no. 1-1, p. 3].

GEICO argues, on the other hand, that Plaintiff's breach of contract claim fails because GEICO had the right to terminate the 2020 GFR Agreement for any reason, or for no reason, upon 30 days' notice to Plaintiff. Further, says GEICO, Plaintiff was not entitled to any renewal commissions after the Agreement had been legally terminated. Lastly, GEICO contends that Plaintiff is barred from bringing its unjust enrichment claim because the 2020 GFR Agreement between the parties directly addresses Plaintiff's right to a "final payment" and precludes any "equitable claim for future commissions." GEICO, accordingly, asks this court to dismiss Plaintiff's lawsuit, with prejudice, under Rule 12(b)(6).

## II.  STANDARD OF REVIEW

Under Rule 12(b)(6), a defendant may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In order to survive such a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S.662, 678 (2009). A plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . . Factual allegations must be enough to raise a right to relief above the speculative level . . . ." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also PSKS, Inc. v. Leegin Creative Leathers Prods., Inc.*, 615 F.3d 412, 417 (5th Cir. 2010). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 663.

While courts generally may not look beyond the pleadings when ruling on a Rule 12(b)(6) motion to dismiss, the district court may "refer to matters of public record, as well as to documents attached to the complaint." *Hicks v. Parker*, 349 F. App'x 869, 870 (5th Cir. 2009). When an

6

"allegation is contradicted by the contents of an exhibit attached to the pleading, then indeed the exhibit and not the allegation controls." *Smit v. SXSW Holdings, Inc.*, 903 F.3d 522 (5th Cir. 2018) (emphasis added) (quoting *U.S. ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 377 (5th Cir. 2004)).

Motions brought pursuant to Rule 12(b)(6) ordinarily are disfavored and rarely granted. *Sosa v. Coleman*, 646 F.2d 991, 993 (5th Cir. 1981). A court may dismiss a complaint, or any part of it, only when the plaintiff has failed to allege "enough facts to state a claim to relief that is plausible on its face" and fails to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 127 S.Ct. 1955, 1965, 1974, 167 L.Ed.2d 929 (2007).

### III.   ANALYSIS

#### A. Choice of Law

A federal court exercising diversity jurisdiction[9] applies the substantive law of the forum state. *Learmonth v. Sears, Roebuck & Co.* 710 F.3d 249, 258 (5th Cir. 2013). A district court, then, must apply the choice of law rules of the state in which the action is brought. *Williamson Pounders Architects PC v. Tunica Cty., Miss.* 597 F.3d 292, 295 (5th Cir. 2010). Mississippi is the forum state for the lawsuit *sub judice*. Its choice of law provisions must be enforced here and given effect unless Mississippi's provisions are arbitrary or fundamentally unfair. *Id*. Thus, obedient to the longstanding doctrine of *Erie Railroad Co., v. Tompkins*, 304 U.S. 64 (1938), this court, sitting in Mississippi, applies the substantive law of Mississippi to this dispute.

The contract which is the heart of this dispute features a choice-of-law provision, stating that the agreement between the parties "shall be governed by the laws of the State of Maryland". Mississippi courts enforce a choice-of-law provision unless:

---

[9] See Footnote 3.

> the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or ... application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which ... would be the state of the applicable law in the absence of an effective choice of law by the parties.

*PIC Group, Inc. v. LandCoast Insulation, Inc*., 718 F. Supp. 2d 795, 799-800 (S.D. Miss. 2010) (quoting Restatement (Second) of Conflict of Laws § 187(2) (1971)).

When a choice-of-law provision states an agreement is "governed by" the laws of another state, the selected state's law governs *contract-based* claims, but Mississippi law governs *tort* claims. *Cypress Pharm., Inc. v. CRS Management, Inc*., 827 F. Supp. 2d 710, 723-24 (S.D. Miss. 2011) (emphasis added).

Plaintiff's Complaint alleges three causes of action: Count I- Breach of Contract; Count II- Renewal Commission; and Count III-Unjust Enrichment. This court notes that Plaintiff's breach of contract claim (Count I) and renewal commission claim (Count II) both sound in contract. This court, therefore, must look to Maryland law when assessing the validity of these claims.

Mississippi courts further have found that "unjust enrichment" is a "modern designation for the doctrine of 'quasi-contracts.'" *Magnolia Fed. Sav. & Loan Ass'n v. Randal Craft Realty Co.,* 342 So.2d 1308, 1311 (Miss.1977). Maryland law, therefore, governs this claim as well.

### B. Breach of Contract

Plaintiff first claims that GEICO breached its contract by terminating the 2020 GFR Agreement in retaliation for Plaintiff's conduct during an investigation. Retaliation, says Plaintiff, is not a proper basis for termination under the 2020 GFR Agreement, and that GEICO's alleged retaliatory action violates the covenant of good faith and fair dealing.

Plaintiff argues that GEICO's Motion to Dismiss as to the breach of contract claim can only be granted if this court finds, as a matter of law, that the 2020 GFR Agreement unambiguously

allows GEICO to terminate the 2020 GFR Agreement "without cause," for "no reason," or "at-will".

Pursuant to Maryland law, whether the contract is ambiguous is a question of law. *Diamond Point Plaza Ltd. P'ship v. Wells Fargo Bank, N.A.*, 400 Md. 718, 751-52, 929 A.2d 932, 951-52 (2007) (citing *United Services v. Riley*, 393 Md. 55, 79, 899 A.2d 819, 833 (2006). First, the court determines whether a contract is ambiguous by deciding whether the contract "is susceptible of more than one meaning" when "read by a reasonably prudent person." *Id*. The parties' disagreement over the contract's meaning does not make a contract ambiguous. *Id*. Next, if the language is unambiguous, the Court must "'give effect to its plain meaning and not contemplate what the parties may have subjectively intended by certain terms at the time of formation.'" *Id*. (quoting *Cochran v. Norkunas*, 398 Md. 1, 16, 919 A.2d 700, 709 (2007)).

In determining ambiguity, the entire contract must be considered, "not merely a portion thereof." *Nova Research, Inc. v. Penske Truck Leasing, Co*., 952 A.2d 275, 283 (Md. 2008); see also *Sky Angel U.S., LLC v. Discovery Communications, LLC*, 885 F.3d 271, 278 (4th Cir. 2018) ("Maryland law instructs courts to consider the entire contract when deciding if it is ambiguous.").

In the case at bar, the 2020 GFR Agreement provides for two types of termination: immediate termination and termination upon 30 days' notice.

The first sentence of the Termination Clause, enumerated *supra*, states: "This Agreement may be terminated by GEICO or GFR on 30 days prior written notice."

The Termination Clause next states that "GEICO may terminate this Agreement *with immediate effect* in the event of any breach of this Agreement by GFR, any change in control[10] of GFR, in the event that GFR or any of its principals becomes unlicensed or unable to continue for

---

[10] This court does not have before it the Articles of Organization for the GFR, Plaintiff Sims Agency, LLC. No party has expounded upon what this "change in control" may entail.

9

any reason, or the event that GEICO determines that it is in the best interests of GEICO or its policyholders to terminate…" (emphasis added).

Plaintiff, contends that the preamble language in support of its breach of contract claim: "GEICO retains the right to terminate this Agreement in its sole discretion *should it determine for any reason that the interests of GEICO, its business plans, or its policyholders are furthered thereby*." [Docket no. 10, p.] Plaintiff argues that this statement reasonably could be read to impose a cause requirement on any termination, whether immediate or upon 30 days' notice, thus rendering the Agreement ambiguous.

This court, however, disagrees. The preamble does not conflict with either party's unrestricted right to terminate upon this 30 days' notice. The plain language of the first sentence of the Termination clause allows either GEICO or the GFR, such as Plaintiff here, to terminate "upon 30 days' notice."

Further, the 2020 GFR Agreement reflects no end date or specified duration. Plaintiff asks this court to find that because the contract had no specified duration, it could only be terminated for cause. Generally, "[w]hen [a] contract calls for successive performances but is indefinite in duration, it is commonly terminable by either party, with or without a requirement of reasonable notice." RESTAT 2D OF CONTRACTS, § 33, Comment D; see also Uniform Commercial Code § 2-309(2). Maryland jurisprudence gives deference to this principle. See *Kiley v. First Nat'l Bank*, 102 Md. App. 317, 335, 649 A.2d 1145, 1153 (1994) (holding that to extent bank's letter constituted a contract, it was terminable at will because it had no defined duration).

Plaintiff alleges that Maryland law requires parties to act fairly and in good faith when a party has discretion to terminate a contract. *Sky Angel U.S., LLC v. Discovery Communications, LLC*, 885 F.3d 271, 276 (4th Cir. 2018)("[u]nder Maryland law, a party with discretion to terminate

10

a contract 'is limited to exercising that discretion in good faith and in accordance with fair dealing.'"). Plaintiff further asserts that pursuant to the holding in *Sky Angel*, "[w]hether a party has exercised its contractual rights in good faith is a question of fact." *Id*. at 277 (citing *David A. Bramble, Inc. v. Thomas*, 396 Md. 443, 914 A.2d 136, 149 (2007)). This court notes that, contrary to Plaintiff's earlier contentions of wrongful termination of the 2020 GFR Agreement "without cause", Plaintiff uses Sky Angel under the theory that "GEICO certainly had discretion to terminate the contract.' [Docket no. 10, p. 8]. Plaintiff contends that GEICO could only exercise that discretion subject to the covenant of good faith and fair dealing, an issue best reserved for a jury.

This court, however, finds that *Sky Angel*, does not apply to the circumstances *sub judice*. The 2020 GFR Agreement is a contract of indefinite duration. *Sky Angel*, contrariwise, featured a "multi-year agreement." See *Sky Angel U.S.*, 2. Further, the contract in Sky Angel did not contain a bilateral right to terminate upon 30 days' notice; instead, it gave only the defendant a right to terminate "in the event [defendant] determines that the Service signal integrity or the Service signal security measures or distribution methodology used by or on behalf of [Sky Angel] are not satisfactory." *Sky Angel*, 885 F.3d at 275. The Fourth Circuit called this provision a "satisfaction clause" and noted that "under Maryland law, satisfaction clauses must be exercised in accordance with the duty of good faith and fair dealing…" *Id*.

The key clause at issue here, the Termination Clause, establishes a bilateral right to terminate on 30 days' notice. Under this provision, neither Plaintiff nor GEICO has the obligation to show cause for terminating the Agreement on 30 days' notice. Plaintiff fails to direct the Court to any other applicable Maryland case, which has been interpreted to impose a duty of good faith and fair dealing.

11

This court, accordingly, finds that the 2020 GFR Agreement unambiguously gave either party the unrestricted right to terminate the agreement upon 30 days' notice. This court sees no express contractual limitation on this right. Plaintiff's breach of contract claim, therefore, is dismissed with prejudice.

C. *Renewal Commissions*

Generally, "unless the contract of an agent provides for commissions on renewal premiums paid after the termination of his employment, he will <u>not</u> be entitled to such commissions after his agency has been rightfully terminated." Insurance agent's right to commissions on renewal premiums, 36 A.L.R.3d 958, 2a.

GEICO argues that because the contract is silent on renewal commissions after termination, Plaintiff is not entitled to such commissions. GEICO directs this court to the following authority: *Prof'l & Bus. Men's Life Ins. Co. v. Salisbury*, 238 F.2d 278, 280 (10th Cir. 1956) ("[T]he overwhelming weight of authority holds that the right to renewal commissions depends upon the continued existence of the contract of employment and that such right ceases upon termination of the contract, unless there are express or necessarily implied provisions therein conferring the right to the receipt of such commissions after the termination of the contract."); and S. *Farm Bureau Life Ins. Co. v. Mitchell*, 435 So. 2d 745, 747 (Ala. Civ. App. 1983) ("We note that as a general proposition, an insurance agent has no inherent right to receive renewal premium commissions. Any such right accruing to him depends solely and strictly on the terms of his contract with the company he represents.").

The above rulings are consistent with Maryland's statutory scheme, says GEICO, which scheme denies captive agents, such as Plaintiff, any "non-contractual" right to renewal

commissions. See Md. Code Ann., Ins. § 27-503(b)(1)[11]; *Metz v. Allstate Ins. Co.*, 164 Md. App. 386, 883 A.2d 943 (2005).

Plaintiff, in opposition to GEICO's arguments, states that it is not seeking renewal commissions under the Maryland statute. Plaintiff, rather, asserts a right to these renewal commissions under the 2020 GFR Agreement only.

Plaintiff argues that the 2020 GFR Agreement contemplates the survival of rights following termination:

> Upon termination of this Agreement, a party's obligations shall cease except for those remaining or required to be performed following such termination. For the avoidance of doubt, the parties agree that *those provisions of this Agreement that logically should survive its termination in order to accomplish its fundamental purposes will do so* . . .

[Docket no. 1-1, p. 35] [emphasis added]. Plaintiff contends that, logically, one such "fundamental purpose" is payment of renewal commissions.

GEICO, however, argues the following provision unambiguously ends renewal commissions upon termination: "Upon termination of this Agreement, GEICO shall withhold GFR's final commission check for a period of six (6) months following the termination effective date . . ."

This court notes that although GEICO's cited provision refers to a "final commission check", the contract is silent on when commissions cease, if at all. This court also has before it these

---

[11] **Notice to insurance producer of intention to cancel agreement or refuse a class of renewal business**
(b)(1) This subsection does not apply to:
(i) policies of life insurance, health insurance, surety insurance, wet marine and transportation insurance, and title insurance; or
(ii) insurance producers or policies of a company or group of companies represented by insurance producers who by contractual agreement represent only that company or group of companies if:
1. the business is owned by the company or group of companies; and
2. the cancellation of any contractual agreement does not result in the cancellation or refusal to renew any policies.
Md. Code Ann., Ins. § 27-503 (West)

unanswered questions: Is GEICO required to pay renewal commissions for each of the six (6) months after termination? Does GEICO advance anticipated renewal commissions?

GEICO's interpretation of the language is not unequivocal and certainly lacks clarity. In trying to determine when renewal commissions end: one provision promises to pay renewal commissions for years; another provision contemplates "obligations" that survive termination; another provision discusses a six (6) month period after which a "final commission check" is paid; however, no provision clearly addresses when and if renewal commissions end upon termination. This court, accordingly, finds that the 2020 GFR is ambiguous as to the issue of renewal commissions. Because such ambiguity exists, this court must consider parol or extrinsic evidence. This court, therefore, must deny GEICO's motion to dismiss Plaintiff's claim for renewal commissions at this juncture.

### D.  Unjust Enrichment

This court finally assesses the viability of Plaintiff's unjust enrichment claim against GEICO. Plaintiff's Complaint alleges the following in support of its Count III- Unjust Enrichment:

- To the extent [GEICO is] allowed to continue collecting renewal commissions on policies sold by Plaintiff, it will be unjustly enriched.

- Pursuant to the GFR Agreements, Plaintiff sold insurance policies, many of which will renew in future years. To the extent [GEICO has] no contractual obligation to pay renewal commissions to Plaintiff, then [GEICO] would be allowed to benefit from the efforts of Plaintiff's sales.

- Based on historical knowledge of renewals, [GEICO] is aware or [has] knowledge of the benefits that will be conferred upon [it] in future years.

- [GEICO] refuses to pay any renewal commissions to Plaintiff.

[Docket no. 1-1, p. 6].

Plaintiff asserts that his claim for renewal commissions owed to him but retained by GEICO is *per se* an unjust enrichment claim. Plaintiff cites the following cases: *Glass v. Miss.*

14

*Protective Life Ins. Co.*, 314 N.W.2d 393, 397-398 (Iowa 1982) (denying an insurance company's motion to dismiss because the court could "not say that no state of facts is conceivable under which plaintiff might prove a right to recover renewal commissions from defendant on a theory of unjust enrichment."); *Fine v. Guardian Life Ins. of America and Park Avenue Securities*, 450 F.Supp.3d 20, 36-37 (D. Mass. 2020)(holding that an insurance agent's allegations amounted to a plausible unjust enrichment claim because he alleged that his contract was terminated "without cause" and defendants' retention of his renewal commissions was unjust.); and *Norris v. Lumbermen's Mut. Cas. Co.,* 881 F.2d 1144, 1152 (1st Cir. 1989) ("The Fortune and Gram line of cases equate an unfair denial of earned commissions with unjust enrichment.").

This court appreciates that "well settled law in Maryland, and elsewhere, [holds] that a claim for unjust enrichment may not be brought where the subject matter of the claim is covered by an express contract between the parties." *FLF, Inc. v. World Publications, Inc.,* 999 F. Supp. 640, 642 (D. Md. 1998). In *FLF*, for example, the District Court denied an unjust enrichment claim for severance payments "[g]iven the express contract between the parties here specifically providing that WPI would not be liable for severance payments…" *Id*. at 62.

This court notes, however, that the parties' 2020 GFR Agreement *sub judice* provides that GEICO will issue Plaintiff's "final commission check" six months following the termination. As stated above, certain provisions, of the whole Agreement are ambiguous. The parties' 2020 GFR Agreement does not directly address Plaintiff's right to renewal commissions, a circumstance, in this court's eye, which creates ambiguity and requires this court to deny GEICO's argument on this point.

## IV.     CONCLUSION

This court finds that the plain language of the 2020 GFR Agreement shows GEICO had the right to terminate Plaintiff, without need to provide reason therefore, upon providing 30 days' written notice to Plaintiff.  GEICO gave such notice. The 2020 GFR Agreement further allowed GEICO to terminate Sims *immediately* if GEICO determined that Plaintiff's continued agency was not in GEICO's or the policyholders' best interest. Whatever the "best interest" was, GEICO was not under the contract required to further specify as to any particulars. Whether GEICO was persuaded to act in response to an internal investigation, or some other catalyst was GEICO's right under the contract.

This court finds, however, that Plaintiff may have a valid claim for renewal commissions and unjust enrichment under the 2020 Agreement; therefore, this court cannot grant GEICO's Motion to Dismiss theses claim at this juncture.

**IT IS, THEREFORE, ORDERED that Defendants' Motion to Dismiss [Docket no. 4] hereby is GRANTED IN PART and DENIED IN PART.**

**IT IS FURTHER ORDERED that, for reasons stated above, Plaintiff's Breach of Contract claim is DISMISSED with prejudice.**

The parties hereby are directed to contact this court with proposed dates for Oral Arguments regarding the Plaintiff's claims for Renewal Compensation and Unjust Enrichment.

**SO ORDERED this the 12th day of March, 2023.**

/s/HENRY T. WINGATE
**UNITED STATES DISTRICT COURT JUDGE**